FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 1 5 2022

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
Northern ~~JONESBORO~~ DIVISION

**CANDIE DEPRIEST, Individually and on
Behalf of All Others Similarly Situated**                                              **PLAINTIFF**

vs.                                  No. 3:22-cv- 65 - BSM

**THE LOGAN CENTERS, ~~INC~~** This case assigned to District Judge __Miller__         **DEFENDANT**
and to Magistrate Judge __Harris__

**ORIGINAL COMPLAINT—COLLECTIVE ACTION**

Plaintiff Candie Depriest ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys Daniel Ford and Josh Sanford of Sanford Law Firm, PLLC, for her Original Complaint—Collective Action ("Complaint") against Defendant The Logan Centers, Inc. ("Defendant"), states and alleges as follows:

## I.   INTRODUCTION

1.   Plaintiff brings this action on behalf of herself and all others similarly situated against Defendant for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA") and the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201 *et seq.* (the "AMWA").

2.   Plaintiff seeks a declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including a reasonable attorney's fee, within the applicable statutory limitations period, as a result of Defendant's policy and practice of failing to pay proper compensation under the FLSA and the AMWA.

3.   Within the three years prior to the filing of this Complaint, Defendant has willfully and intentionally committed violations of the FLSA and AMWA as described, *infra*.

4. This Complaint is related to the case *Tammy Carden, et al. v. The Logan Centers, Inc.,* case no. 3:19-cv-167-DPM, in that the claims of Plaintiff are the same or substantially similar as those of the plaintiffs in *Carden*.

## II.   JURISDICTION AND VENUE

5. The United States District Court for the Eastern District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

6. Plaintiff's claims under the AMWA form part of the same case or controversy and arise out of the same facts as the FLSA claims alleged in this Complaint. Therefore, this Court has supplemental jurisdiction over Plaintiff's AMWA claims pursuant to 28 U.S.C. § 1367(a).

7. Defendant conducts business within the State of Arkansas, with locations in Forrest City, Jonesboro, West Memphis and Wynne.

8. Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the Defendant is located in Arkansas, so the State of Arkansas therefore has personal jurisdiction over Defendant.

9. Plaintiff was employed by Defendant to provide services for Defendant's businesses in Jonesboro. Therefore, the acts alleged in this Complaint had their principal effect within the Jonesboro Division of the Eastern District of Arkansas, and venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III.   THE PARTIES

10. Plaintiff is an individual and resident of Craighead County.

11. Defendant is a domestic for-profit corporation, organized and conducting business under the laws of the State of Arkansas.

12. Defendant may be served through its registered agent for service of process, Jeannie Sherman, at 2548 Riverwater Lane, Fayetteville, Arkansas 72703.

### IV.   FACTUAL ALLEGATIONS

13. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

14. Defendant operates a mental health counseling service providing counseling and therapy services to in-patients and out-patients at multiple locations in Eastern Arkansas, including The Logan Center at Forrest City, The Logan Center at West Memphis, and The Logan Center at Wynne.

15. Upon reasonable information and belief, Defendant's annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Complaint.

16. During each of the three years preceding the filing of this Complaint, Defendant employed at least two individuals who were engaged in interstate commerce or in the production of goods for interstate commerce, or had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person, such as plumbing tools and equipment, and office supplies.

17. During each week in the two years preceding the filing of this lawsuit, Defendant employed at least 4 employees.

18. Plaintiff worked for Defendant as an hourly-paid Qualified Behavioral Health Professional ("QBHP") from 2018 until September of 2021.

19. At all times relevant herein, Plaintiff was an "employee" of Defendant as defined by the FLSA and the AMWA.

20. Defendant also employed other QBHPs within the three years preceding the filing of this lawsuit.

21. At all times material herein, Plaintiff has been entitled to the rights, protections and benefits provided under the FLSA and the AMWA.

22. In the course of her duties, Plaintiff regularly used instrumentalities of interstate commerce such as her cell phone and the internet.

23. Defendant directly hired Plaintiff and other QBHPs, paid them wages and benefits, controlled their work schedules, duties, protocols, applications, assignments and employment conditions, and kept at least some records regarding their employment.

24. As a QBHP, Plaintiff performed duties such as providing mental health treatment, contacting Defendant's patients, attending meetings, scheduling appointments, filling out relevant paperwork, writing notes on patient appointments, billing patients, etc.

25. Other QBHPs had the same or similar job duties as Plaintiff.

26. It was Defendant's commonly applied policy to only pay Plaintiff and other QBHPs for only the hours in which they billed Defendant's patients.

27. Defendant did not pay Plaintiff or other QBHPs for time spent doing other required work activities, such as waiting between patients, driving between patient

locations, attending meetings, and writing required patient notes because all of these tasks were not billable to Defendant's patients.

28. The work that Plaintiff and other QBHPs performed was not all billable to Defendant's patients; therefore, not all of the work was compensated.

29. Plaintiff and other QBHPs were sometimes required to drive patients to and from doctor appointments, and they were allowed to bill only one hour for this time (and was therefore paid for only one hour).

30. However, Plaintiff regularly spent three or more hours transporting the patient to the appointment, waiting at the appointment, and then transporting the patient back home.

31. Upon information and belief, other QBHPs spent a similar amount of time driving patients to and from doctor appointments.

32. Defendants did not allow Plaintiff and other QBHPs to input notes into the computer system until after 5 p.m. on the day they saw patients. Defendant required that all patient notes be drafted after the encounter and never when meeting with the patient.

33. Further, Defendant would withhold pay for days when Plaintiff and other QBHPs did not input notes into the billing system prior to midnight of the date following when the treatment occurred. This resulted in Defendant's withholding single or multiple days' pay from Plaintiff by Defendant for weeks and even months.

34. Upon information and belief, in at least some cases, Defendant failed to ever pay Plaintiff for patient visits in which she did not timely put her notes into the system.

35. Defendant failed to pay Plaintiff and other QBHPs for all patient visits. Specifically, when Plaintiff visited a patient who was classified as "non-billable" in Defendant's system, Plaintiff was not paid for those visits.

36. Plaintiff regularly worked more than 40 hours per week, including time spent in the performance of the uncompensated work described above.

37. Upon information and belief, other QBHPs also regularly worked more than 40 hours per week, including time spent in the performance of the uncompensated work described above.

38. Plaintiff and other QBHPs were sometimes required to drive between client residences or locations in the course of their duties.

39. Defendant required Plaintiff and other QBHPs to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs, and other equipment necessary for Plaintiff and other QBHPs to complete their job duties.

40. Pursuant to such requirements, Plaintiff and other QBHPs purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing, and incurred cell phone and data charges all for the primary benefit of Defendant.

41. Defendant did not track Plaintiff's and other QBHPs' actual expenses nor does Defendant keep records of all of those expenses.

42. Defendant did not reimburse Plaintiff and other QBHPs for their actual expenses.

43. Defendant did not reimburse Plaintiff and other QBHPs at the IRS standard business mileage rate.

44. Defendant did not reimburse Plaintiff and other QBHPs at a reasonable approximation of their expenses.

45. Defendant did not provide any reimbursement to Plaintiff and other QBHPs for expenses incurred.

46. 29 U.S.C. § 531.35 states, "The wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer . . . the whole or part of the wage delivered to the employee."

47. Because Defendant failed to reimburse Plaintiff and other QBHPs for mileage, they consistently "kicked back" to Defendant the cost of their mileage, which caused additional overtime violations.

48. Defendant did not pay Plaintiff and other QBHPs 1.5x their regular hourly rate for hours worked over 40 in a week.

49. Defendant knew, or showed reckless disregard for whether, the way it paid Plaintiff and other QBHPs violated the FLSA and the AMWA.

## V.     REPRESENTATIVE ACTION ALLEGATIONS

50. Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated into this section.

51. At all relevant times, Plaintiff and all others similarly situated have been entitled to the rights, protections and benefits provided by the FLSA.

52. Plaintiff brings her claims for violation of the FLSA as a collective action pursuant to Sections 207 and 16(b) of the FLSA on behalf of all persons who were, are

or will be employed as similarly situated within the statute of limitations period, who are entitled to payment of the following types of damages:

    A.    Overtime premiums for all hours worked for Defendant over forty in any week;

    B.    Liquidated damages; and

    C.    Attorney's fees and costs.

53.    In conformity with the requirements of FLSA Section 16(b), Plaintiff has filed or will soon file a written Consent to Join this lawsuit.

54.    The relevant time period dates back three years from the date on which this lawsuit was filed herein and continues forward through the date of judgment pursuant to 29 U.S.C. § 255(a), except as set forth herein below.

55.    The members of the proposed collective share these traits:

    A.    They were hourly employees;

    B.    They had substantially similar job duties and responsibilities;

    C.    They were subject to the same policy of being paid only for hours they billed for direct patient treatment and care;

    D.    They worked over forty hours in at least one week within the three years preceding the filing of this lawsuit;

    E.    They did not receive 1.5 times their regular hourly rate for hours worked over 40 in a week.

56.    Plaintiff is unable to state the exact number of the potential members of the collective but believe that it exceeds twenty people.

57.    Defendant can readily identify the members of the Section 16(b) collective.

58. The names, cell numbers and physical and mailing addresses of the FLSA collective action plaintiffs are available from Defendant, and a Court-approved Notice should be provided to the FLSA collective action plaintiffs via text and first class mail (or email) to their last known addresses as soon as possible, together with other documents and information descriptive of Plaintiffs' FLSA claims

## VI.   FIRST CAUSE OF ACTION
### (Individual Claim for Violation of the FLSA)

59. Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated in this section.

60. Plaintiff asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

61. At all relevant times, Defendant was the "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203.

62. At all relevant times, Defendant has been, and continues to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

63. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to 40 each week and to pay 1.5x regular wages for all hours worked over 40 in a week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and accompanying DOL regulations.

64. Despite the entitlement of Plaintiff to overtime payments under the FLSA, Defendant failed to pay Plaintiff an overtime rate of 1.5x her regular rate of pay for all hours worked over 40 each week.

65. Defendant's failure to pay Plaintiff all overtime wages owed was willful.

66. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of this Complaint.

### VII. SECOND CAUSE OF ACTION
### (Individual Claim for Violation of the AMWA)

67. Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated in this section.

68. Plaintiff asserts this claim for damages and declaratory relief pursuant to the AMWA, Arkansas Code Annotated §§ 11-4-203(4).

69. At all relevant times, Defendant was the "employer" of Plaintiff within the meaning of the AMWA, Ark. Code Ann. § 11-4-203(4).

70. Defendant failed to pay Plaintiff all overtime wages owed, as required under the AMWA.

71. Defendant's conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary and in bad faith.

72. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff for monetary damages, liquidated damages, costs, and a reasonable attorney's fee provided by the AMWA for all violations which occurred beginning at least three years preceding the filing of Plaintiff's initial complaint, plus periods of equitable tolling.

73. Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiff as provided by the AMWA, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

74. Alternatively, should the Court find that Defendant acted in good faith in failing to pay Capped Hourly Plaintiffs as provided by the AMWA, Capped Hourly Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

## VIII. THIRD CAUSE OF ACTION
### (Collective Action Claim for Violation of the FLSA)

75. Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated in this section.

76. Plaintiff, individually and on behalf of all others similarly situated, asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

77. At all relevant times, Defendant has been an "employer" of Plaintiff and all those similarly situated within the meaning of the FLSA, 29 U.S.C. § 203.

78. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to 40 each week and to pay 1.5x regular wages for all hours worked over 40, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and accompanying DOL regulations.

79. Defendant classified Plaintiff and other similarly situated employees as nonexempt from the overtime provisions of the FLSA.

80. Despite the entitlement of Plaintiff and those similarly situated to overtime payments under the FLSA, Defendant failed to pay Plaintiff and those similarly situated an overtime rate of 1.5x their regular rates of pay for all hours worked over 40 each week.

81. Defendant knew or should have known that its actions violated the FLSA.

82. Defendant willfully failed to pay overtime wages to Plaintiff and to others similarly situated.

83. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff and all those similarly situated for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of this Complaint.

## IX. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Candie Depriest, individually and on behalf of all others similarly situated, respectfully prays that Defendant be summoned to appear and to answer herein as follows:

A. That Defendant be summoned to appear and answer this Complaint;

B. A declaratory judgment that Defendant's practices alleged herein violate the FLSA, the AMWA and their related regulations;

C. Certification of a collective under Section 216 of the FLSA of all individuals similarly situated, as further defined in any motion for the same;

D. Judgment for damages for all unpaid overtime wage compensation owed under the FLSA, the AMWA and their related regulations;

E. Judgment for liquidated damages pursuant to the FLSA, the AMWA and their related regulations;

F. An order directing Defendant to pay Plaintiff and all others similarly situated prejudgment interest, a reasonable attorney's fee and all costs connected with this action; and

G. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**CANDIE DEPRIEST, Individually
and on Behalf of All Others
Similarly Situated, PLAINTIFF**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

/s/ Daniel Ford
Daniel Ford
Ark. Bar No. 2014162
daniel@sanfordlawfirm.com

/s/ Josh Sanford
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**CANDIE DEPRIEST, Individually and on**     **PLAINTIFF**
**Behalf of All Others Similarly Situated**

vs.                         No. 3:22-cv-

**THE LOGAN CENTERS, INC.**                   **DEFENDANT**

## CONSENT TO JOIN COLLECTIVE ACTION

I was employed as an hourly Qualified Behavioral Health Professional for The Logan Centers, Inc., within the past three years. I understand this lawsuit is being brought under the Fair Labor Standards Act for <u>unpaid wages</u>. I consent to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action or adjudication by the Court.

_____
**CANDIE DEPRIEST**
March 15, 2022


**Josh Sanford, Esq.**
**SANFORD LAW FIRM, PLLC**
**Kirkpatrick Plaza**
**10800 Financial Centre Parkway, Suite 510**
**Little Rock, Arkansas 72211**
**Telephone: (501) 221-0088**
**Facsimile: (888) 787-2040**
**josh@sanfordlawfirm.com**