IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**CANDIE DEPRIEST, Individually and on**                 **PLAINTIFF**
**Behalf of All Others Similarly Situated**

vs.                      Case No. 3:22-cv-65-DPM

**THE LOGAN CENTERS, INC.**                                **DEFENDANT**

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
COSTS AND ATTORNEYS' FEES**

In its Response to Plaintiff's Motion for Costs and Attorneys' Fees ("Response"), ECF No. 52), Defendant relies on broad generalizations and categorical objections rather than raising objections to specific entries, which is insufficient to defeat Plaintiff's request for reasonable fees. In objecting to a request for a fee award, "[t]he party opposing the fee award . . . has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) (internal editing marks omitted).[1] "The Court should not reduce an award *sua sponte;* rather, it can only do so in response to specific objections made by the opposing party."

---

[1] *See also Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008) (noting that "the burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices"); *Dowsing v. Berryhill*, No. 2:14-cv-02675-cgc, 2019 U.S. Dist. LEXIS 2522, at *7 (W.D. Tenn. Jan. 7, 2019) ("[T]he Commissioner again does not detail which billing entries it contends are unreasonable, which is a basis for denying the objection thereto."); *Oglesby v. W. Stone & Metal Corp.*, No. cv-99-492-BR, 2001 U.S. Dist. LEXIS 14439, at *25 (D. Or. Sep. 10, 2001) ("The Court concludes Defendant could easily have identified the dates of the disputed entries and the gross amounts billed in blocks of time for such entry dates. Accordingly, the Court declines to deduct any amount for such entries because Defendant has not sufficiently identified the in-house conference or file review entries to which its critical comments are directed.").

*Rodriguez v. George's, Inc.,* No. 5:19-cv-5035, 2021 U.S. Dist. LEXIS 53997 (W.D. Ark. Mar. 23, 2021). "Once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request." *Id*.

## A.  Defendant's "specific" objections to Plaintiff's fee request have no merit.

Defendant makes no specific request for reduction of Plaintiff's overall fees and its objections to Plaintiff's fee petition should be rejected on that basis alone. Even under a more generous reading of Defendant's Response, however, it becomes apparent that Defendant's version of the events in this case would demand an unattainable level of prescient knowledge on Plaintiff and Plaintiff's behalf. This is not the standard for reducing fees in this District, and the Court should not engage in Defendant's Monday-morning-quarterbacking.

For example, without engaging in any analysis or providing a specific request or amount for reduction, Defendant simply states that Plaintiff's fees should be reduced because the case could have been settled at an earlier date. As pointed out in Defendant's Response, however, the offer to include Plaintiff in the settlement negotiations in this case's predecessor was made when the negotiations in *Carden* were largely finished.[2] It made little sense at the time to go back to the drawing board for one individual, particularly when that individual was believed to represent a collective.[3] Declining to throw in her lot with the *Carden* plaintiffs was a reasonable decision, and Plaintiff's fee request should not be reduced based on this objection.

---

[2]  Defendant's Response notes that Plaintiff's counsel refused to include Plaintiff in the *Carden* settlement negotiations on March 24, 2022, and the parties filed their Joint Notice a Liability Settlement four days later.

[3]  This is belief is bolstered by the fact that that the "second plaintiff" Defendant objects to materialized at the same time. *See* Billing Invoice, ECF No. 50-1, Entry Nos. 29, 32, 34 (dated March 23 and 24, 2022).

In the only instance of what can charitably be called specific objections, Defendant claims that "[m]ultiple persons bill for review of intake information," but provides a list of dates on which this duplicative billing apparently occurred instead of using the Entry Numbers for discreet items, so there is no real way to determine which of the entries on these dates Defendant objects to. Likewise, Defendant did not provide a specific number or dollar amount by which it believes the billing should be reduced due to this supposed duplication, so the following is merely guesswork.

A review of the dates provided reveals that Defendant (likely) objects to: (1) 0.4 hours attributed to Attorney Josh Sanford for review of intake information, conferencing with attorneys regarding facts for complaint drafting, and issues surrounding the notice of related case;[4] (2) 0.3 hours attributed to Attorney Courtney Lowery for review of intake information in preparation for drafting the Complaint and the drafting of the notice of related case;[5] and (3) 0.1 hours attributed to Attorney Daniel Ford for conferencing with SLF's intakes team regarding a potential second plaintiff.[6] These objections total 0.9 hours of billing in the amount of $230.02. Plaintiff concedes 0.2 hours attributed to Josh Sanford's review of case information ($76.60)[7] and the 0.1 hours attributed to Daniel Ford's conferences regarding a second plaintiff ($20.00).[8] The 0.3 hours of work attributed to drafting a notice of related case was reasonable.

Defendant objects to 2.0 of the hours SLF billed in drafting the Complaint in this case, but it did not specify which of the nine entries contained in the "Case Initiation and Complaint" category were vague, duplicative, or unreasonably billed. Moreover,

---

[4] Billing Invoice, ECF No. 50-1, Entry Nos. 2, 6, and 18.
[5] Billing Invoice, ECF No. 50-1, Entry Nos. 7 and 19.
[6] Billing Invoice, ECF No. 50-1, Entry No. 29.
[7] Billing Invoice, ECF No. 50-1, Entry Nos. 2 and 6.
[8] Billing Invoice, ECF No. 50-1, Entry No. 29.

Defendant's suggestion that Plaintiff should have been able to instantly produce a "canned" complaint ignores the realities of legal representation and ethical considerations. Counsel cannot simply pull up a form, change a few words and file it. Each case has its own unique fact patterns, so even pre-existing documents must be carefully reviewed and modified. Again, Defendant did not provide a number that it believes would have been a reasonable amount for preparation of the Complaint; two hours for the preparation and finalization of the Complaint is reasonable in this case.

That being said, Plaintiff concedes a reduction of overall billing for entries related to the second plaintiff who never joined the case (all of which occurred after the Complaint was finalized and filed). Of of these entries, one has already been conceded above,[9] and the remaining three entries total 0.4 hours of billing (0.1 attributed to Josh Sanford and 0.3 attributed to Daniel Ford)[10] for a total of $98.30 in this category.

Defendant next apparently seeks total removal of all billing related to motions practice that it deems "unsuccessful," which includes Plaintiff's request for conditional certification that was denied without prejudice and her Response to Defendant's Motion for Summary Judgment. Plaintiff's pursuit of conditional certification was reasonable when she filed her Motion,[11] and she intentionally sought to keep fees low by using a paralegal for the bulk of the drafting work. However, Plaintiff recognizes that this work is arguably "unsuccessful" and concedes a 50% reduction ($320.00) in this category.

Plaintiff's time spent responding to Defendant's Motion for Summary Judgment is inherently reasonable; Plaintiff was obligated to defend against Defendant's offensive

---

[9]   Billing Invoice, ECF No. 50-1, Entry No. 29.
[10]  Billing Invoice, ECF No. 50-1, Entry Nos. 32, 34 and 88.
[11]  As described above, at the time Plaintiff believed there was a second plaintiff ready to join the collective.

motion, and Plaintiff's counsel was ethically bound to respond fully and zealously. Plaintiff did not "largely los[e]" on summary judgment; if she had she would not have been able to negotiate a settlement. Even so, the Court's reduction of Defendant's overall liability does not render the time spent in that category unreasonable.

Plaintiff's time spent in calculating damages is likewise reasonable. Defendant responded to Plaintiff's written discovery on August 3, 2023, and Plaintiff timely calculated damages in the following month. Defendant's implication that the only conceivable use for damages calculations is in responding to summary judgment should be disregarded. Plaintiff used these calculations in case strategy, particularly in driving the case toward settlement. Plaintiff's time spent calculating damages is reasonable.

Defendant next objects to time spent in drafting the fee petition and uses the time and monetary value of the Discovery category to imply the Fee Petition category is inflated. This comparison fails on many fronts. To begin with, Plaintiff's discovery was, as Defendant argued all documents in this case should be, based on form discovery drafted in other cases. Discovery in FLSA cases varies only slightly from case to case, but still necessitates some customization and edits, resulting in the 1.6 hours in this category.[12] The fee petition, while foundationally the same from case to case, requires extensive customization based on each case's litigation history and the attorneys of record in the case. The most obvious variation from case to case is the billing invoice; there is no "form" document for a specific case's billing, and the invoice must be created, examined, and edited from scratch for every case. Even so, drafting the fee petition only took 1.1 hours more than drafting the mostly "canned" discovery.

---

[12] This work includes the drafting and service of Plaintiff's written discovery, review of Defendant's answers, and the preparation of disclosures.

Next, because discovery is so largely "form" from case to case, SLF is able to keep fees in that category down by assigning the work to a paralegal. This is not possible with a fee petition, which requires familiarity with precedential case law and knowledge of litigation practices; attorney preparation and customization is required in drafting the fee petition. Defendant benefitted on both fronts: the paralegal work on discovery kept overall fees down ($160.00 for 1.6 hours of work), while an attorney experienced in drafting fee petitions was able to draw on knowledge of past cases to draft the fee petition in this case expediently and with minimal oversight ($655.00 for 2.7 hours).[13]

### B.   Defendant's general objections to Plaintiff's fee request have no merit.

Although not fully fleshed out, Defendant implicitly argues that the settlement value of this case, coupled with Defendant's perception of Plaintiff's efforts to "prolong the case," should result in a reduction of the fee award. This is not the law, and in fact it is the *opposite* of the law. Precisely because individual damages under the FLSA are often so small that no employee would or could pay an attorney to recover, the fee-shifting provision is a congressionally authorized way to ensure that employees can afford to enforce their wage rights. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603–04 (2d Cir. 2020). Indeed, the "whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Id.* at 604 (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 169 (2d Cir. 2011) (emphasis original)).

---

[13] Notably, drafting the actual Motion and supporting documents, which is the only "form" portion of a fee petition, took less time than discovery in this case at only 1.5 hours. The remaining 0.8 hours was expended in examining, categorizing, redacting, and reducing the 314 billing entries in this case to 125 entries requested.

Defendant is trying to impose a proportionality rule, functionally asserting that some FLSA claims are just not worth the work it takes to pursue them, but case law explicitly rejects this approach. As set forth in Plaintiff's initial briefing, "courts often award attorneys' fees that far exceed the plaintiffs' recovery in FLSA cases," and reject the use of proportionality as a basis for reducing fee awards. *See Morales v. Farmland Foods, Inc.*, 2013 U.S. Dist. LEXIS 56501, *21–23 (D. Neb. 4/18/2013) (string citing cases); *See also Wright v. Tyler Techs.*, No. 4:20-cv-454-KGB, 2021 U.S. Dist. LEXIS 177028, *14 (E.D. Ark. Sep. 17, 2021) ("However, this Court rejects a 'rule of proportionality' in wage-and-hour cases because tying the attorneys' fees to the amount awarded would make it difficult, if not impossible, for individuals with meritorious wage-and-hour claims but relatively small potential damages to attract effective legal representation.").

Further, Plaintiff was successful in achieving settlement on her FLSA claims, and the settlement value was meaningful. Under these circumstances, deductions to fees based on comparison to Plaintiff's proposed damages is inappropriate. *See Ginnaven v. Ala. Ark. Wildlife, LLC*, No. 5:15-cv-140-JLH, 2015 U.S. Dist. LEXIS 150355, at *11 (E.D. Ark. Nov. 5, 2015) (rejecting the defendant's argument that fees should be reduced "because the plaintiff has achieved only partial or limited success" because "the degree of success should be measured not by the early settlement offer made by the plaintiffs but by whether the plaintiffs obtained complete success on all of their claims, which they did: the plaintiffs obtained a complete recovery on all of their claims").

In rejecting the employer's request for a deduction based on "the plaintiffs' alleged lack of success," the court in *Morales v. Farmland Foods, Inc.*, pointed out that the Court had "already determined that the settlement was fair and reasonable," and that while the settlement amount represented a small percentage of the plaintiffs' initial estimate of damages, "the settlement amount represents a significant increase from the amount (zero) of damages that the defendant contended was due and owing to the plaintiffs." No. 8:08-cv-504, 2013 U.S. Dist. LEXIS 56501, at *33–34. (D. Neb. Apr. 18, 2013). "A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if "the plaintiff failed to prevail on every contention." *Fox v. Vice*, 563 U.S. 826, 834, 131 S. Ct. 2205 (2011)

Here, had Plaintiff not successfully navigated Defendant's motions, her recovery would have been zero. But Plaintiff's efforts to diligently litigate this case results in settlement in her favor. Accordingly, this Court should reject Defendant's arguments regarding reductions based on "limited success."

**C.     Plaintiff's requested hourly rates are reasonable.**

Plaintiff acknowledges that the hourly rates requested by Plaintiff in her fee petition have been rejected by courts in this District. Rather than spending hours reviewing and collating rates awarded by all the various courts in which SLF practices, it has been SLF's practice in recent years to consistently request the rates it deems reasonable and supportable, which is the only requirement dictated by case law. Plaintiff stands by the rates requested in her fee petition.

**D.     Plaintiff's requested costs are reasonable.**

Defendant argues that the service fee in this case would have been unnecessary if Plaintiff had agreed to settlement with the *Carden* plaintiffs, but neglects to mention that it was fully aware that Plaintiff intended to file suit and did not agree to waive service. In fact, Defendant made itself wholly unavailable for service by failing to update its Arkansas Secretary of State business filings after its registered agent (and company president) moved, which necessitated the TLO search for a new address for service, and by refusing to authorize its attorneys in *Carden* to accept service on its behalf.

**E.     Conclusion**

For the reasons set forth above, Plaintiff's request for fees and costs should be granted in its entirety with the exception of the billing conceded by Plaintiffs. This conceded amount currently totals $514.90. Plaintiff respectfully requests that if the Court reduces SLF's hourly rates in awarding a reasonable fee, it likewise reduces the conceded amounts commiserate with the awarded rates.[14] Plaintiff likewise concedes the

---

[14]     Plaintiff concedes 0.3 hours attributed to Josh Sanford, 1.2 hours attributed to Daniel Ford, and 1.5 hours attributed to paralegal work.

Respectfully submitted,

**CANDIE DEPRIEST, Individually and on Behalf of All Others Similarly Situated, PLAINTIFF**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (800) 615-4946
Facsimile: (888) 787-2040

Sean Short
Ark. Bar No. 2015079
sean@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com